UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cr-224-MOC-DSC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| TIMOTHY LAMONT CLOUD, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 24). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic. The Government has responded in opposition to the motion.

## I. BACKGROUND

At approximately 10:36 pm, on April 7, 2017, Charlotte-Mecklenburg Police ("CMPD") were on patrol and drove to the Brookwood Inn; task force officers recently made several firearm and drug-related arrests of individuals sitting in cars in the motel parking lot. While driving through the parking lot, officers noticed a red Dodge Avenger with four people inside; no one was in the driver's seat. As the officers drove up, the Avenger's occupants all stared at the police car and rolled up the windows of the car. (Doc. No. 11 at ¶ 21). The officers decided to make voluntary contact with the individuals in the car and as the two officers approached the Avenger– one on each side – one officer saw the rear left passenger attempt to conceal a firearm under the floor mat under the driver's seat. (Id. at ¶ 22). After the officers observed this, Defendant

-1-

emerged from the motel, approached the car, and got into the driver's seat. (Id. at 23). The officers called for backup. (Id.). The officers began questioning the occupants, including Defendant, about whether there were any firearms or drugs in the vehicle; Defendant replied "No" as did the other occupants. (Id.).

Defendant then exited the vehicle and walked away from the officers towards the motel. All four occupants of the vehicle were asked to exit the Avenger. (Id. at ¶ 24). Defendant stood at the front of the vehicle talking to his mother on his cell phone. One officer attempted to speak with Defendant, but Defendant asked the officer to speak to his mother. The officer then asked Defendant if the vehicle was his, to which he replied it was his mother's car. (Id. at ¶ 25). The officer asked Defendant for consent to search the vehicle, which Defendant refused; the officer conducted a frisk of the vehicle for weapons. Officers found a weapon on the left passenger side under the driver's floor mat. (Id.).

At this time, Defendant became agitated and began walking off in order to cool down. The officer asked other officers on scene to detain Defendant, loudly commanding him to put his hands behind his back. As officers attempted to detain Defendant, he resisted by pulling away and walked/ran about 15-20 feet before he was detained. (Id. at 27). During the arrest, Defendant continued to resist. Despite receiving commands to stop resisting, Defendant fought the officers. Officers ultimately used a taser on Defendant to make the arrest. (Id. at 28). Despite being placed in handcuffs, Defendant's resistance did not cease. During a search incident to arrest, Defendant spread his legs making his pants so tight that officers could not remove items from his pockets. (Id.). Once Defendant finally submitted to a search, he told the officers that he had a pistol in his right front pocket. Officers removed a stolen and loaded 9mm pistol from his right front pocket

and a magazine with 9mm ammunition from his front left pocket. (Id.). Even after his arrest, Defendant continued his combative behavior. During transfer to CMC Main hospital for treatment of injuries. Defendant shook and kicked while on the medical stretcher and made multiple threats that he intended to assault the officers. (Id. at 29).

On August 16, 2017, Defendant was named in a single-count Indictment charging him with Possession of a Firearm by a Felon, in violation of 18 U.S.C. § 922(g)(1). A presentence report was prepared and finalized on December 4, 2018, and the matter was set for sentencing on February 2, 2019. (Doc. No. 11, Presentence Report at ¶ 3).

On October 17, 2019, with the consent of the United States, Defendant entered a conditional guilty plea to a Bill of Information in 3:19-cr-244 charging him with a violation of 18 U.S.C. § 922(j). (Doc. No. 11 at ¶ 4). Defendant reserved the right to have the United States Court of Appeals for the Fourth Circuit "review the district court's April 23, 2018, adverse determination of his December 11, 2017 motion to suppress, filed in case number 3:17-cr-251-MOC." (Id.). Because this issue was reserved for appeal, case number 3:17-cr-251 remains open.

On January 28, 2020, this Court sentenced Defendant to 74 months of imprisonment. (Doc. No. 14). Defendant filed a Notice of Appeal on February 23, 2020. (Doc. No. 16). His appeal remains pending with the Fourth Circuit. and oral argument is scheduled for January 27, 2021. See United States v. Cloud, No. 20-4081 (4th Cir. 2020).

Defendant was on supervised release in two cases – 3:03-cr-29-MOC and 3:16-cr-108-MOC. Because of the conduct underlying the conviction, Defendant had a Supervised Release Violation ("SRV") petition filed in each of these cases. Pursuant to the plea agreement, on January 28, 2020 and August 26, 2020, Defendant admitted Violations 1, 4, and 5 in each case.

At both final supervised release revocation hearings, the Court adopted the recommendation in the plea agreement and sentenced Defendant to 14 months imprisonment in each case, to run concurrent with each other, but consecutive to the sentence imposed in 3:19-cr-224. (Doc. No. 43 in 3:12-cr-285 and Doc. No 102 in 3:03-cr-29).

Defendant has been in custody since his September 17, 2017 arrest in 3:17-cr-251; he has served approximately 40 months of his 74-month sentence. He now moves for early release and as a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). Defendant argues that in the forty-months he has been incarcerated at Mecklenburg County Jail ("MCJ"): 1) he has suffered from coronavirus; 2) he has endured extreme conditions at MCJ; 3) he has had a family member die from the virus; 4) his Mother has just had a major operation; and 5) his daughter is expecting a second child. (Doc. No. 24).

## II.  DISCUSSION

As a preliminary matter, when a timely notice of appeal is filed, jurisdiction of the case transfers to the court of appeals and the district court is stripped of jurisdiction to rule on matters involved in the appeal. Doe v. Pub. Citizen, 749 F.3d 246, 258 (4th Cir. 2014). Because Defendant's appeal remains pending before the Fourth Circuit – in fact, it is scheduled for oral argument on January 27, 2021, this Court should resolve the motion within the limits of Rule 37(a). United States v. Bunch, 828 Fed. Appx. 185 (4th Cir. 2020) (unpublished) (citing Fed. R. Crim. P. 37(a)). Therefore, this Court cannot grant Defendant's motion, but can defer consideration, deny relief, or issue an indicative ruling. (Id.) (citing United States v. Pawlowski, 967 F.3d 327, 329 n.4 (3d Cir. 2020)).

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term

-4-

of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 2020 WL 7050097 (4th Cir. Dec. 2, 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at **6–9. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at *9. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at *7 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 2020 WL 7050097 (4th Cir. Dec. 2, 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[2] that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction does not demonstrate "extraordinary and compelling reasons" warranting release. As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Although the Court is not bound by the Sentencing Commission's policy statement governing compassionate release motions filed by the BOP, the policy, which remains "helpful guidance" (McCoy, 981 F.3d at 282 n.7), defines "extraordinary and compelling reasons" to include, as relevant here, any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG 1B1.13, cmt. n.1(A).

Defendant's Motion does not allege any medical condition, let alone one that falls within

---

[2] See Centers for Disease Control, People with Certain Medical Conditions, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (as of November 23, 2020).

one of the categories specified in the application note and recognized by the CDC as a heightened COVID-19 risk factor, that rises to "extraordinary and compelling." While Defendant does allege that he has already suffered from COVID-19, he puts forth no evidence as to when he was diagnosed or that he had any significant side effects or lingering medical issues. Further, there is no evidence that Defendant has been unable to provide self-care while in MCJ, nor is there any evidence that Defendant has failed to receive adequate medical care while in MCJ. Similarly, Defendant's claims about the conditions at MCJ, which are applicable to all of the inmates there, do not create "extraordinary and compelling" reasons to grant Defendant's motion. See, e.g., United States v. Hegyi, No. 2:17-CR-82-JVB-APR, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own."). This is especially true as MCJ continues to emphasize the health and safety of its prisoner population.

For these reasons, Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c).

Furthermore, even if the Court found that Defendant had established "extraordinary and compelling reasons" to support release, the Court would still deny Defendant's motion in consideration of the danger he poses to society and the applicable § 3553(a) actors.

Defendant poses a danger to public safety if released. Defendant has a lengthy criminal history dating back to the age of 14. Most significant are his three federal convictions, all involving firearms. His extensive criminal history includes convictions for possessing a firearm as a felon, carjacking, brandishing a firearm during and in relation to a crime of violence, possession of a stolen firearm, and robbery affecting interstate commerce. (Doc. No. 11 at ¶¶ 52

and 53). Defendant has been unsuccessful on supervised release, as the conduct underlying the present conviction occurred while on supervision in two separate federal cases.

While Defendant's two federal convictions stem from conduct in 2002 and 2003, for which he was sentenced to 151 months and 162 months (concurrent to each other), his conduct in these cases is worthy of discussion as it illustrates and highlights why the § 3553(a) factors strongly disfavor a sentence reduction.

On December 9, 2002, Defendant and his co-conspirator Timothy Massey entered a pawnshop in Salisbury, North Carolina, brandished firearms, and stole $251.40 in cash and thirty- one various firearms with a value of more than $12,000. (Doc. 11 at ¶ 53). "During the robbery, Cloud and Massey forced two store employees to the rear of the business and bound them with electrical tape." (Id.). An indictment was returned in the Middle District of North Carolina ("MDNC") and Defendant pleaded guilty to Robbery Affecting Interstate Commerce and Possession of a Firearm by a Convicted Felon. (Id.). Defendant was sentenced to 151 months in prison; he was released from prison in October 2015 and his supervision was transferred to the Western District of North Carolina on April 29, 2016. (Id.).

On February 5, 2003, a Rowan County Sherriff's Deputy was transporting Defendant and Massey to the Mecklenburg County Detention Center from Rowan County. (Doc. No. 11 at ¶ 52). Below is a description of that transfer:

> Both the defendant and Mr. Massey were handcuffed and shackled together. Defendant Cloud began to complain of severe headaches, stomach cramps, nausea, and began to cough and gag. He told Deputy Connell that he was going to "throw up" and Deputy Connell pulled the transport van to the side of the road onto Graham Street, Charlotte, NC. Deputy Connell removed his handgun and placed in under the driver's seat of the van before going to check on Defendant Cloud. When Deputy Connell went to open the sliding door to the van, both Defendant Cloud and Mr. Massey pushed through the door attacking Deputy

-9-

> Connell and knocking him to ground. The defendant held Deputy Connell on the ground while Mr. Massey unshackled himself from the defendant and retrieved the deputy's firearm from under the driver's seat. Mr. Massey and Defendant Cloud fled the scene on foot after retrieving the firearm. Investigative report indicates the deputy was not threatened with the firearm.

(Doc. No. 11 at ¶ 52). After escaping, Defendant and Massey ran to a nearby garage where they robbed an individual at gunpoint and stole a vehicle. When police spotted Defendant, he fled and was successful in eluding officers. (Id.). Defendant then turned himself in. In August 2003, a jury convicted Defendant of Carjacking, Brandishing a Firearm During and In Relation to a Crime of Violence, and Possession of a Stolen Firearm, and Aiding and Abetting the Same as to each charge. (Id.). Defendant was sentenced to 162 months, consecutive to the MDNC sentence. Less than two years after his release from prison, Defendant was arrested on the underlying offenses.

Defendant's criminal history involving crimes of violence, his escape from custody, his flight and combativeness during both his 2003 and 2017 arrests, and his failure on supervision, all illustrate that he poses a risk of safety to others and establishes that the § 3553(a) factors do not support a reduction in his sentence.

In sum, Defendant failed to establish an extraordinary and compelling reason for a sentence reduction under § 3582(c), and Defendant failed to show that he would not pose a risk to society or others if released. Therefore, in consideration of Defendant's record and the totality of relevant circumstances, this Court denies the motion for a sentence reduction. Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 24), is **DENIED**.

Signed: February 2, 2021

Max O. Cogburn Jr
United States District Judge